IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CV-115-FL

| | |
|---|---|
| KELLY T. MILLER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| | ) **MEMORANDUM &**<br>) **RECOMMENDATION** |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>) |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings (DE's 16 & 18). Plaintiff has also filed a response (DE-20) . The time for the parties to file any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-16) be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-18) be DENIED. Specifically, it is RECOMMENDED that the matter be remanded for more specific findings of fact as detailed below.

**I. Statement of the Case**

Plaintiff filed an application for disability insurance benefits ("DIB") on April 17, 2003 alleging that she has been disabled since December 23, 2002 (Tr. 32). This application

1

was denied initially and upon reconsideration. (Tr. 32). A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled in a decision dated October 19, 2004 (Tr. 32). However, the Social Security Administration's Office of Hearings and Appeals ("Appeals Council") vacated the October 19, 2004 decision and remanded the case for further proceedings (Tr. 32). A second hearing was held on August 15, 2006 (Tr. 32). On November 21, 2006 a second decision was issued by an ALJ finding that Plaintiff was not disabled (Tr. 32-43) The Appeals Council denied Plaintiff's request for review on May 1, 2009, rendering the ALJ's determination as Defendant's final decision. (Tr. 7-9). Plaintiff filed the instant action on July 13, 2009 (DE-4).

## II. Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more

2

than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." <u>Craig</u>, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir.1990).

### **III. Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
> <u>Mastro v. Apfel</u>, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found

that Plaintiff is no longer engaged in substantial gainful employment. (Tr. 34). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) fibromyalgia/chronic fatigue syndrome ("CFS") and 2) depression (Tr. 34). In completing step three, however, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 35). Despite finding that Plaintiff's CFS was severe, the ALJ did not compare Plaintiff's CFS symptoms to other pertinent listings to determine whether medical equivalence existed.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff was not able to perform her past relevant work as a licensed practical nurse (Tr. 42). At step five, however, the ALJ found that there were jobs that Plaintiff could perform and that these jobs existed in significant numbers in the national economy. (Tr. 42). Despite an earlier finding that Plaintiff's depression was limiting (Tr. 36), the ALJ did not use the testimony of a vocational expert ("VE") (Tr. 42). Instead, the ALJ relied upon the medical-vocational guidelines ("Grids") to determine that there were jobs in the national economy which Plaintiff could perform. Regardless, the ALJ ultimately determined that Plaintiff was not under a disability at any time through the date of his decision. (Tr. 42-43).

## A. The ALJ erred by not complying with Social Security Ruling 99-2p

In determining whether Plaintiff had any impairments which met or equaled on of the listed impairments, the ALJ stated:

> I have considered the claimant's fibromyalgia under section 1.02 of the

4

Listing of Impairments for motor dysfunction of a joint, which requires, in this case, involvement of one major peripheral weight-bearing joint as defined in 1.00B2b. I have considered the claimant's complaints of hand, neck, upper back, shoulder, lower back hip and knee pain and pain in her ankles and feet carpal tunnel syndrome tinder section 1.02 of the Listing of Impairments for motor dysfunction of a joint, which requires, in this case, involvement of one major peripheral joint (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively and in connection with back, hip, knee, or ankle pain, resulting in ability to ambulate effectively. There is no evidence of inability to perform fine and gross movements effectively and no evidence of inability to ambulate effectively.

In order to meet section 12.04 for affective disorders, there must be a diagnosis of depression, bipolar disorder, or manic syndrome, with appropriate symptoms and which results in at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration; or medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support. There is no evidence that the claimant has at least two marked limitations in the areas of activities of daily living, social functioning, or concentration, persistence, and pace, and there have been no episodes of decompensation at work or in work-like settings, each of an extended duration.

I have considered the claimant's allegations of a mental impairment. For mental disorders, severity is assessed in terms of the functional limitations imposed by the impairment, known as the "B" criteria. The first area of the "B" criteria is "activities of daily living." She testified that she cooks, does the laundry, uses the Computer and watches television. I find that she has only a mild limitation in daily activities.

The second area of the "B" criteria is social functioning. She lives with her son. She is able to shop. I conclude that she has a mild limitation in "social functioning."

> The third area of the "B" criteria is "concentration, persistence, and pace." The claimant was able to adequately describe her medical history to various practitioners and at the hearing. She reported difficulty concentrating, partly due to the narcotic medications which she is taking. I conclude that she has a moderate limitation in concentration, persistence, and pace.
>
> The last area of the "B" criteria is deterioration or decompensation in work or work-like settings. There was no evidence of deterioration or decompensation at work or in a work-like setting.
>
> The claimant does not satisfy the "C" criteria of Listings 12.04 and 12.06 since the claimant has not experienced repeated episodes of decompensation, each of extended duration. She does not have a residual disease process to the extent that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. She does not have a current history of one or more year's inability to function outside a highly supportive living arrangement.
> (Tr. 35-36).

Despite the fact that the ALJ determined that Plaintiff's CFS was severe (Tr. 34), it does not factor prominently in his analysis. Nor does the ALJ compare Plaintiff's CFS symptoms to other pertinent listings to determine whether they are medically equivalent.

Likewise, it is unclear whether Plaintiff's CFS was considered when the ALJ assessed her Residual Functional Capacity ("RFC"). With regard to Plaintiff's RFC, the ALJ determined that:

> claimant bas the residual functional capacity to perform light work. She can lift up to 20 pounds occasionally and 10 pounds frequently. This residual functional capacity is based on Dr. Rafalowski's finding of tenderness and the record as a whole. Based on Dr: Van Nynatten's observations, I find that she is limited to unskilled work due to depression.
> (Tr. 36).

6

Social Security Ruling 99-2p states:

> When an individual is found to have a severe impairment, the adjudicator must proceed with the sequential evaluation process and must next consider whether the individual's impairment is of the severity contemplated by the Listing of Impairments contained in appendix 1, subpart P of 20 CFR 404. **Inasmuch as CFS is not a listed impairment, an individual with CFS alone cannot be found to have an impairment that meets the requirements of a listed impairment; however, the specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist** . . .
>
> . . .Further, in cases in which individuals with CFS have psychological manifestations related to CFS, consideration should always be given to whether the individual's impairment meets or equals the severity of any impairment in the mental disorders listings in 20 CFR, part 404, subpart P, appendix 1, sections 12.00 ff. or 112.00 ff . . .
>
> . . In assessing RFC, all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities . . .
> SSR 99-2p, 64 FR 23380-03 (Emphasis added).

In short, the ALJ's decision does not comply with SSR 99-2p. Moreover, because the ALJ's analysis does not sufficiently discuss Plaintiff's CFS, the undersigned cannot determine whether the ALJ's findings are supported by substantial evidence.

For these reasons, it is HEREBY RECOMMENDED that this matter be remanded to permit an ALJ to more fully discuss and analyze Plaintiff's CFS.

**B. The ALJ erred in failing to consider the medical opinion of Dr. Dixon Pearsall**

Plaintiff was examined by Dr. Dixon Pearsall on May 3, 2006. Dr. Pearsall observed that Plaintiff's primary complaints were: 1) constant pain of the muscles and joints; 2) depression; 3) anxiety; 4) sleep disturbance; 5) fatigue; and 6) inability to concentrate or

7

focus. Ultimately, Dr. Pearsall concluded that Plaintiff:

> has pronounced difficulty in concentration, focus, and pace. She has difficulty with recall and precision. She has difficulty following instructions. Any position identified based on transferable skills from [Plaintiff's] work as an LPN would require high levels of focus, concentration, accuracy, complex reasoning and complex thought. At present, [Plaintiff] is not capable of such high level processes. A core tenet of all helping professions is "to do no harm." An LPN has considerable responsibility for patient care including medication preparation and administration. In my opinion, [Plaintiff's] emotional state would not in good conscience support patient care responsibilities. There would be "at risk'" factors for any employer utilizing [Plaintiff] in patient care if the employer had knowledge of her current status and functioning. Additionally there would be "at risk" factors in patient care settings based on utilization of current medications and the effects of medications. Therefore, at present [Plaintiff] is "not employable" in semi-skilled or skilled positions based on transferable skills from her position as a LPN.
>
> At unskilled levels, all work has expectations concerning attendance, focus, concentration, and pace. Unskilled work requires the ability to work in the presence of co-workers and supervisors. In my opinion, [Plaintiff] is not capable of meeting these basic employer expectations. In vocational terms, an inability to meet basic employee expectations renders an individual "not employable." . . .
>
> . . .Based on the current status of [Plaintiff's] medical, psychological, exertional and non-exertional issues, I would not recommend active vocational rehabilitation case management. Specifically, I would not recommend vocational placement activities. In my opinion, such activities would likely not be successful and could potentially be detrimental.
>
> As [Plaintiff] is a relatively young person with an associate degree level nursing education and substantial vocational skills, I would hope that after successful medical and psychological intervention, she would be capable of returning to work in patient care. If unable to return to patient care work after successful intervention, Plaintiff would be a likely candidate for vocational rehabilitation. Given [Plaintiff's] work history, potential earnings capacity, and financial responsibilities, I

>believe Ms. Miller would be working at present if capable.
>(Tr. 575-576).

Defendant concedes that the ALJ failed to consider Dr. Pearsall's opinion in his November 21, 2006 decision (DE-19, pg. 18). The Fourth Circuit has stated that:

>"[u]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."
>Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)(*quoting* Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)).

Because the ALJ did not discuss and analyze Dr. Pearsall's opinion, the undersigned cannot determine whether his findings are supported by substantial evidence.

Accordingly, it is HEREBY RECOMMENDED that this matter be remanded to permit an ALJ to more fully consider Mr. Pearsall's medical opinion.

## C. The ALJ erred in not using the testimony of a VE

In the instant matter, the ALJ used the medical-vocational guidelines ("Grids") to determine that there were jobs in the national economy which Plaintiff could perform. If a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). However, the Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. Aistrop v. Barnhart, 36 Fed. Appx. 145, 146 (4th Cir. 2002)(unpublished

9

opinion). To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the Grids may not be relied upon to demonstrate the availability of alternate work activities. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). Rather, when a claimant suffers from both exertional and nonexertional limitations, the Grids are not conclusive but may only serve as a guide. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)(*citing* Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). A nonexertional limitation is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not . . . [s]uch limitations are present at all times in a claimant's life, whether during exertion or rest." Woody v. Barnhart, 326 F. Supp.2d 744, 752 (W.D.Va. 2004)(*quoting* Gory 712 F.2d at 930)). Typically, they are conditions such as mental disorders (including depression), environmental intolerances, substance addictions, or sensory impediments. *Id.* (*citing* 20 C.F.R. § 1569a, SSR 96-8p; and Walker, 889 F.2d at 48-49 (4th Cir. 1989)). Furthermore "[a] non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category." Aistrop, 36 Fed. Appx. at 147(*citing* Gory, 712 F.2d at 930). However, not every nonexertional limitation or malady rises to the level of nonexertional impairment, so as to preclude reliance on the Grids. Walker, 889 F.2d at 49 (*citing* Grant, 699 F.2d at 189). The proper inquiry is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable. *Id.* When a claimant suffers from nonexertional limitations, the Commissioner must produce a VE to testify that the particular claimant retains the ability to perform specific jobs which exist in the national

10

economy. Grant, 699 F.2d at 192 (*citing* Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975)).

Here, the ALJ made internally inconsistent determinations regarding Plaintiff's depression. Specifically, the ALJ initially finds that Plaintiff's depression is a severe impairment and that Plaintiff "is limited to unskilled work due to depression" (Tr. 34, 36). However, the ALJ later concludes that Plaintiff's depression is not "particularly severe" (Tr. 42). This inconsistency alone merits a remand for further findings.

Moreover, despite the inconsistency of the ALJ's decision, it is relatively clear that he found Plaintiff's depression to be severe at step two of the five-step analysis. In short, it appears that the ALJ determined that Plaintiff's depression significantly affected her ability to work. *See,* Cain v. Astrue, 2009 WL 3698112 (D.S.C., November 2, 2009)(*citing* Millhouse v. Astrue, 2009 WL 763740 (M.D.F., March 23, 2009)(Use of Grids to direct a finding of non-disability improper where ALJ has found that Plaintiff has a severe impairment of depression)). As such, Defendant was required to produce the testimony of a VE to meet its burden at step five of the sequential evaluation. Grant, 699 F.2d at 192.

Therefore, it is HEREBY RECOMMENDED that this matter be remanded to permit an ALJ to: 1) make consistent findings with regard to Plaintiff's depression; and 2) obtain the testimony of a VE.

## **Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-16 )be GRANTED, and that Defendant's Motion for Judgment on the Pleadings (DE-18) be DENIED. Specifically, it is RECOMMENDED

11

that the matter be remanded to permit an ALJ to make additional findings in accordance with the foregoing directives.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 30th day of March, 2010.

_____
William A. Webb
U.S. Magistrate Judge